IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SOOK YOUNG HONG, | ) | CIVIL NO. 10-00379 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING SUMMARY |
| | ) | JUDGMENT IN FAVOR OF |
| vs. | ) | PLAINTIFF |
| | ) | |
| JANET NAPOLITANO, Secretary | ) | |
| of the Department of Homeland | ) | |
| Security; ALEJANDRO MAYORKAS, | ) | |
| Director of United States | ) | |
| Citizenship and Immigration | ) | |
| Services; ERIC H. HOLDER, | ) | |
| JR., Attorney General of the | ) | |
| United States; and DAVID | ) | |
| GULICK, District Director of | ) | |
| United States Citizenship and | ) | |
| Immigration Services, | ) | |
| Honolulu District Office, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

I.      INTRODUCTION.

        The Immigration and Nationality Act ("INA" or the

"Act") permits United States citizens to petition for "immediate

relative" status for their foreign-born children, including

adopted children "adopted while under the age of sixteen years."

Plaintiff Sook Young Hong adopted her son, Taeyoung, born in

South Korea, by a court order from the State of Hawaii, entered

January 27, 2004.  This date fell three weeks after Taeyoung's

sixteenth birthday, but, pursuant to Hawaii Revised Statutes

§ 578-8, the state court exercised its discretion to fix the date

of the adoption as of the date Hong had filed her petition, three months before Taeyoung's sixteenth birthday.

After the District Director of the United States Customs and Immigration Services ("USCIS") denied Hong's subsequent petition to accord immediate relative status to Taeyoung, Hong sought review from the Board of Immigration Appeals ("BIA"). The BIA, relying on two prior BIA opinions presenting similar facts, held that Hong's petition could not be granted because Taeyoung's nunc pro tunc adoption date was "not valid for immigration purposes." Hong then filed suit in this court, asking this court to order the BIA to grant her petition.

Because the BIA failed to consider congressional purposes to keep bona fide families united and accord liberal treatment to children, and because the record contains no evidence that this adoption was fraudulent or spurious or that the state court decision should be disregarded as a sham, this court concludes that the BIA decision is arbitrary, capricious, and not in accordance with law. Accordingly, the court denies the Government's motion for summary judgment, and grants Hong's motion for summary judgment.

II.     FACTUAL AND PROCEDURAL BACKGROUND.

The parties agree on the relevant facts. Taeyoung was born on January 7, 1988, in South Korea. Pl.'s Concise Stmt. Facts ("Pl.'s Facts") No. 2, ECF No. 35; Defs.' Stmt. Facts Opp.

("Defs.' Facts") No. 2, ECF No. 30.  Taeyoung immigrated to the
United States on August 5, 2003, on visitor status, and began
living with Hong's family on that date.  Defs.' Fact Nos. 2-3.
Pl.'s Fact No. 3.  Hong petitioned to adopt Taeyoung on October
6, 2003.  Defs.' Fact No. 4; Pl.'s Fact No. 4.  Taeyoung turned
sixteen years old on January 7, 2004.  See Defs.' Fact No. 1;
Pl.'s Fact No. 2.  The Hawaii state court issued the adoption
decree on January 27, 2004.  Defs.' Fact No. 6; Pl.'s Fact No. 6.
According to the adoption decree, the adoption was effective as
of October 6, 2003, the date the petition had been filed.
Taeyoung was still 15 years old as of October 6, 2003.  Defs.'
Fact No. 6; Pl.'s Fact No. 7.

Hong is a United States citizen.  Pl.'s Fact No. 1.  On
December 6, 2005, Hong applied for an I-130 visa with USCIS,
seeking Taeyoung's classification as an immediate relative of a
United States citizen.  Defs.' Fact No. 8; Pl.'s Fact No. 9.  The
USCIS denied Hong's petition on June 1, 2006.  Defs.' Fact No. 9;
Pl.'s Fact No. 10.  Hong moved for reconsideration on June 7,
2006, and on June 13, 2006, the USCIS reopened and again denied
the petition, stating, "Although the petition for adoption was
filed prior to the beneficiary reaching the age of 16, the
adoption was granted after the beneficiary reached 16."  Defs.'
Fact No. 11; Pl.'s Fact Nos. 11-12.

Hong timely appealed to the BIA. <u>See</u> Defs.' Fact No.

12; Pl.'s Fact No. 13. The BIA dismissed the appeal on June 10,

2010. Defs.' Fact No. 15; Pl.'s Fact No. 15. The BIA reasoned

that "the beneficiary was over the age of sixteen at the time of

adoption, since the beneficiary was born on January 7, 1988, and

the final adoption decree is dated January 13, 2004." Pl.'s Fact

No. 15. This suit followed.

III.     <u>STANDARD OF REVIEW.</u>

     A.     Motions to Dismiss Pursuant to Rule 12(b)(6) of
        <u>the Federal Rules of Civil Procedure.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure

provides for dismissal when a claimant fails "to state a claim

upon which relief can be granted." Under Rule 12(b)(6), a

court's review is generally restricted to considering the

contents of the complaint. <u>Sprewell v. Golden State Warriors</u>,

266 F.3d 979, 988 (9th Cir. 2001); <u>Campanelli v. Bockrath</u>, 100

F.3d 1476, 1479 (9th Cir. 1996). Except in certain limited

circumstances, if matters outside the pleadings are considered,

the Rule 12(b)(6) motion is treated as one for summary judgment.

<u>See</u> <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir.

1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996).

     B.     Summary Judgment Pursuant to Rule 56 of the
        <u>Federal Rules of Civil Procedure.</u>

Summary judgment shall be granted when "the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). A moving party has both the initial burden of
production and the ultimate burden of persuasion on a motion for
summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>,
210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to
identify for the court "the portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.
Catrett</u>, 477 U.S. 317, 323 (1986)); <u>accord</u> <u>Miller v. Glenn Miller
Prods., Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006). "A fact is
material if it could affect the outcome of the suit under the
governing substantive law." <u>Miller</u>, 454 F.3d at 987.

When the moving party meets its initial burden on a
summary judgment motion, the "burden then shifts to the nonmoving
party to establish, beyond the pleadings, that there is a genuine
issue for trial." <u>Id.</u> The court must not weigh the evidence or
determine the truth of the matter but only determine whether
there is a genuine issue for trial. <u>See</u> <u>Balint v. Carson City</u>,
180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment
motion, "the nonmoving party's evidence is to be believed, and
all justifiable inferences are to be drawn in that party's

favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. <u>See</u> <u>EEOC v. UPS</u>, 424 F.3d 1060, 1068 (9th Cir. 2005); <u>Colacurcio v. City of Kent</u>, 163 F.3d 545, 549 (9th Cir. 1998).

IV.     <u>ANALYSIS.</u>

A.     <u>The Motions Are Construed as Motions for Summary Judgment.</u>

The Government moves to dismiss the Amended Complaint or, in the alternative, for summary judgment. <u>See</u> ECF No. 29. Hong countermoves for summary judgment. <u>See</u> ECF No. 34. When matters outside the pleadings are considered, the court normally treats a motion as seeking summary judgment. <u>Keams</u>, 110 F.3d at 46. Both the Government and Hong rely extensively on the administrative record in this case. Such reliance is appropriate given Hong's request that this court review an agency decision. This court deems the motions before it to be motions for summary judgment.

B.     <u>Relevant Statutory Background.</u>

The INA imposes a numerical quota on the number of immigrant visas that may be issued and/or the number of aliens who may otherwise be admitted into the United States for permanent residence status. <u>See</u> 8 U.S.C. § 1151(a); <u>see generally</u> 8 U.S.C. §§ 1151-1381 (Subchapter II – Immigration). However, aliens who are "immediate relative[s]" of United States

6

citizens are exempt from these numerical limitations and may obtain immigrant visas by petitioning for immediate relative status.  See id. § 1151(b)(2)(A)(i) (defining "immediate relatives"); id. § 1154(a)(1)(A)(i) (setting forth petitioning procedure).  "Immediate relatives" include "children."  INA § 101(b)(1)(E), 8 U.S.C. § 1151(b)(2)(A)(i).  The statutory definition of "child," for purposes of subchapter II of the INA, includes "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years."  8 U.S.C. § 1101(b)(1)(E)(i).

The BIA interpreted the statute as requiring that the adoption order have been finalized before Taeyoung's sixteenth birthday, regardless of the order's effective date.  See Mem. Supp. Defs.' Mot. Dismiss Amd. Compl. or Mot. Summ. J. ("Defs.' Mot.") 14-20, ECF No. 29.  Hong interprets the statute differently.  She contends that the statute does not contain an age requirement connected with the date an adoption decree issues, and that the BIA's decision was contrary to the statute's plain meaning.  See Mem. Supp. Pl.'s Counter-Mot. Summ. J. 21-26, ECF No. 34.

C.   Agency Deference.

This court does not write on a blank slate.  Chevron deference applies to this court's review of precedential

7

decisions by an administrative agency called on to interpret the statute it is charged with interpreting. <u>Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). Under <u>Chevron</u>, the court first asks whether the "statute is silent or ambiguous" with respect to the specific issue," and, if so, whether the agency's interpretation "is based on a permissible construction of the statute." <u>Id.</u> at 843. Under the BIA's regulations, only "selected decisions of the Board rendered by a three-member panel or by the Board <u>en banc</u> may be designated to serve as precedents." <u>Estrada-Espinoza v. Mukasey</u>, 546 F.3d 1147, 1156-57 (9th Cir. 2008) (en banc) (quoting 8 C.F.R. § 1003.1(g)). Although "[a] single-judge, unpublished, non-precedential BIA decision does not satisfy the standards established for <u>Chevron</u> deference by the Supreme Court," <u>Estrada-Espinoza</u>, 546 F.3d at 1157, the Ninth Circuit has held that when the BIA issues an unpublished decision directly controlled by a published decision interpreting the same statute, <u>Chevron</u> deference applies. <u>See</u> <u>Uppal v. Holder</u>, 605 F.3d 712, 714 (9th Cir. 2010).

Hong's petition was heard by the District Director of the Honolulu District Office of the USCIS. CAR at 17. The Director relied on two precedential BIA decisions, <u>Matter of Cariaga</u>, 15 I. & N. Dec. 716 (BIA 1976), and <u>Matter of Drigo</u>, 18 I. & N. Dec. 223 (BIA 1982), for the proposition that the INA

requires that the adoption be granted before the beneficiary reaches sixteen years old. In Cariaga and Drigo, the BIA rejected petitions for immediate relative status on behalf of two adopted children who were over the statutory age at the time of the adoption, but whose adoption decrees were made retroactively effective by a state or territorial court. Cariaga, 15 I. & N. Dec. at 717; Drigo, 18 I. & N. Dec. at 224-25. Here, the District Director concluded that, under Cariaga and Drigo, "[d]espite the retroactive effective nature given by the court, [Taeyoung's] adoption is not valid for immigration purposes." CAR at 17. The BIA's single-judge, unpublished affirmance stated the essential facts, took note of the "two precedent[ial] decisions rejecting nunc pro tunc adoptions in situations similar to the instant case," and affirmed the Director's decision to deny Hong's application "for the reasons stated in the decision." CAR at 22-23.

Because the BIA opinion was issued by a single judge and was unpublished, standing alone it is entitled to deference only to the extent of its "power to persuade." See Estrada-Espinoza, 546 F.3d at 1157; Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (weight of decision depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to

control"); see, e.g., Kyong Ho Shin v. Holder, 607 F.3d 1213,
1219 (9th Cir. 2010) (applying Skidmore deference to unpublished,
nonprecedential BIA decision).  However, to the extent Cariaga
and Drigo "directly control" the outcome of this case, the BIA
interpretation of the Act expressed in those cases is entitled to
Chevron deference.  Uppal, 605 F.3d at 714; see, e.g., Chen v.
Mukasey, 524 F.3d 1028, 1032 (9th Cir. 2008) (according Chevron
deference to BIA interpretation of INA provision as expressed in
a prior BIA precedential decision).

        Finally, when the BIA, instead of simply adopting the
administrative decision appealed from, conducts its own review of
the evidence and the law, the court's "review is limited to the
BIA's decision, except to the extent that the [underlying
administrative] opinion is expressly adopted."  Nai Yuan Jiang v.
Holder, 611 F.3d 1086, 1091 (9th Cir. 2010).

        D.    *Chevron* Step One.

        The court's first duty is to "give effect to the
unambiguously expressed intent of Congress," when possible.
Chevron, 467 U.S. at 843.  "If a court, employing traditional
tools of statutory construction, ascertains that Congress had an
intention on the precise question at issue, that intention is the
law and must be given effect."  Id. at 843 n.9.  If the statute
is silent or is ambiguous and open to multiple interpretations,
the court proceeds to the second step of Chevron.  Id. at 843;

see also <u>Garcia-Quintero v. Gonzales</u>, 455 F.3d 1006, 1012 (9th Cir. 2006).

An adopted person is a child under section 101(b)(1)(E)(i) of the INA if the person is unmarried and under twenty-one years of age, and was "*adopted while under the age of sixteen years* if the child has been in the legal custody of, and has resided with the adopting parent or parents for at least two years."  8 U.S.C. § 1101(b)(1)(E)(i) (emphasis added).  Each party argues that the definition above unambiguously supports its view of whether Taeyoung qualified as a "child" under the INA.  According to Hong, the "common and ordinary meaning" of "adopt" refers to the date Hong and Taeyoung assumed the legal relationship of parent/child, or the date she took Taeyoung into her family by legal means in order to raise him as her own child. <u>See</u> Pl.'s Mot. at 25-26 & 25 n.2 (citing Black's Law Dictionary, American Heritage Dictionary, and Webster's New World Dictionary).  The adoption's effective date, she argues, signifies the beginning of the required legal relationship.  <u>Id.</u> at 26.

The Government argues that the phrase "adopted while under the age of sixteen" refers to the end of an adjudicatory process by which the new parent/child legal relationship is established.  <u>See</u> Defs.' Mot. at 15-16 n.4 (citing Ballentine's Law Dictionary and Black's Law Dictionary for definitions of

"adoption"); see also Defs.' Reply at 6 (arguing that Hong's definitions actually support the Government's position). Under this view, the conclusion of the adoption process itself, rather than the terms of the adoption decree, determines when the adoption has occurred, and if the process concludes after a child's sixteenth birthday, it is too late. Defs.' Mot. at 16.

The court finds nothing in the statute itself that speaks to this question. A reasonable person could understand the phrase "adopted while under the age of sixteen years" to include all adoptions that are effective as of the child's sixteenth birthday, in which case Taeyoung would qualify as a "child" under the INA. On the other hand, the Government's assertion that the statute sets the date by which the adoption process must have concluded is by no means groundless. The failure by Congress to define "adoption" in the statute places this interesting but thorny issue before this court. See generally 8 U.S.C. § 1101 (definitions).

The structure of the statute is of some assistance. Cf. Nat. Res. Defense Council, Inc. V. Nat'l Marine Fisheries Serv., 41 F.3d 872, 877 (9th Cir. 2005) (noting that, in determining statute's "plain meaning," court may rely on statute's structure to illuminate congressional intent). The next subsection of § 1101 contains wording that seems to comport with the BIA's understanding of § 1101(b)(1)(E)(i). Subsection

(c), which sets forth its own definitions for purposes of INA subchapter III ("Nationality and Naturalization"), defines a "child," <u>inter alia</u>, as "a child adopted in the United States, if such . . . adoption takes place before the child reaches the age of 16 years."  8 U.S.C. § 1101(c).  Subsection (c)'s requirement that a qualifying adoption must "take place before" the child attains sixteen years provides the kind of literal clarity that the BIA reads into subsection (b), which provides instead that a child have been "adopted while under the age of sixteen years."

Far from suggesting that this court should import subsection (c)'s "take place before" language into subsection (b), the differing statutory language in the subsections suggests that Congress intended the adoption dates to be treated differently.  Congress could have written the two subsections to include identical wording, or could have indicated that the meaning of an adopted child under subsection (c) was to be understood by explicit reference to the earlier subsection. Congress did no such thing.  Instead, in subsection (b), Congress required only that the child be adopted "while under the age of sixteen years," making no reference to when adoption proceedings occur or take effect.  The phrasing does not clearly indicate that Congress intended for § 1101(b)(1)(E) to permit or prohibit retroactive adoptions.

Because the term "adoption" in subsection (b) is
ambiguous, the court must determine whether the BIA's
interpretation of the statute is reasonable.

E.    *Chevron* Step Two.

As the Government correctly notes, the Administrative
Procedure Act requires the court to defer to the BIA's
construction of immigration statutes unless the interpretation is
"arbitrary and capricious, an abuse of discretion, or otherwise
not in accordance with the law."  See 5 U.S.C. § 706(2)(A);
Defs.' Mot. at 10.  Review under the arbitrary and capricious
standard must be "narrow," but "searching and careful."  Marsh v.
Or. Nat. Res. Council, 490 U.S. 360, 378 (1989).  The court
considers whether there is a rational connection between the
facts found and the choices made by the agency, and whether the
agency committed a clear error of judgment.  See Or. Nat. Res.
Council, 476 F.3d 1031, 1036 (9th Cir. 2007).

The Supreme Court has explained that the agency's
action is arbitrary and capricious if "the agency has . . .
entirely failed to consider an important aspect of the problem."
Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463
U.S. 29, 43 (1983).  The court must reject a construction of the
statute that is "'contrary to clear congressional intent or that
frustrate[s] the policy that Congress sought to implement.'"
Coyt v. Holder, 593 F.3d 902, 905-06 (9th Cir. 2010) (quoting

14

Schneider v. Chertoff, 450 F.3d 944, 952 (9th Cir. 2006)); see also Mercado-Zazueta v. Holder, 580 F.3d 1002, 1106 (9th Cir. 2009). A court may not, however, substitute its own judgment for that of the agency, or merely determine that it would have decided an issue differently. Marsh, 490 U.S. at 377.

The Government asserts that, under the Supremacy Clause, the BIA was not bound to honor the nunc pro tunc order of the State of Hawaii court. Defs.' Mot. at 27-30. Moreover, according to the Government, the legislative history of the INA demonstrates that Congress sought "to maintain its long-standing tradition of prohibiting the immigration of aliens who had been adopted as adults by U.S. citizens or legal permanent residents." Id. at 17-18. The Government argues that Cariaga and Drigo, which rested on this rationale, were cogently reasoned and therefore binding on the court. Id. at 20-22. Finally, the Government argues that various BIA regulations make clear that the adoption must take place before the child attains sixteen years of age.[1]

---

[1]The BIA never advanced a position regarding its regulations in the administrative appeal, nor did the District Director rely on BIA regulations as bases for denying the I-130 petition. See CAR at 17, 22-23. Cariaga and Drigo, cited by the BIA, were similarly silent as to regulations. The court may not accept counsel's "post hoc rationalizations for agency action." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 50. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Id. (citing, inter alia, SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). In any event, to the extent the BIA's regulations serve as further evidence that the BIA interprets the statute as forbidding adoption decrees entered after a child's sixteenth birthday, the court would find

15

Id. at 15, 22-23.  The court disagrees with the Government's
analysis.

Cariaga examined a decree of adoption issued by Iowa on
October 30, 1975, but given effect "retroactive to April 8,
1963." 15 I. & N. Dec. at 717.  When the decree was entered, the
beneficiary, born in Mexico, was nineteen years old, and the age
limit for immediate relative status for adoptive children at that
time was fourteen years old.  See id.  The beneficiary's birth
father had consented to the adoption on April 8, 1963, and the
beneficiary had lived with his adoptive parents from the time
that consent was given.  Id.  The BIA nevertheless denied
Cariaga's petition for immediate relative status.  Id. at 716.

The BIA noted in Cariaga that immediate relative status
was not originally made available to adoptive children at all
because Congress "fear[ed] that fraudulent adoptions would
provide a means of evading the quota restrictions." Id. at 717
(citing S. Rept. 1515, 81st Cong., 2d Sess. 468).  In later
amending the statute to permit immediate relative status for
adoptive children, Congress imposed an age restriction because it
wanted to "distinguish between bona fide adoptions, in which a
child has been made a part of a family unit, and spurious

_____

such interpretation arbitrary and capricious for the same reasons
discussed herein with respect to the statute.

adoptions," which it said might involve the adoption of adults.

15 I. & N. Dec. at 717 & n.1.  The BIA concluded:

> In light of the history behind the age
> restriction in section 101(b)(1)(E), it
> appears clear that the provision should be
> given a literal interpretation.  The act of
> adoption must occur before the child attains
> the age of fourteen.  Therefore, despite the
> retroactive effect given the beneficiary's
> adoption by the Iowa Court, an adoptive
> relationship was not created within the
> meaning of the Immigration and Nationality
> Act, when the beneficiary was adopted under
> Iowa law at age nineteen. . . . The
> provisions of the Act do not permit
> recognition of this adoption for immigration
> purposes.

Id.

In its Cariaga decision, the BIA acknowledged that, in

passing the INA of 1952, Congress "clearly indicate[d] that the

Congress was concerned with the problem of keeping the families

of immigrants united.  As part of that policy, Congress provided

liberal treatment of children."  Id.  But the BIA then failed to

address the substance of that policy at all in Cariaga.  In other

words, the BIA cited the congressional policy, then ignored it.

In Drigo, the BIA denied immediate relative status to

an adopted child born in Dominica, West Indies, again because the

adoption decree was rendered after the child reached the age of

fourteen.  18 I. & N. Dec. at 224-25.  In that case, a

territorial court in the Virgin Islands had entered the adoption

decree on October 2, 1979, nunc pro tunc as of May 7, 1979.

Id. at 224.  May 7, 1979, was a date prior to the child's fourteenth birthday.  Id.  Stating that "Congress[] inten[ded] that the age restriction . . . be construed strictly," the BIA dismissed the appeal.  Id. at 224-25.  Drigo relied heavily on Cariaga.  See id. at 224.

Here, similarly, the BIA confined its analysis solely to the premise that the age limitation should be construed strictly and to a single fact--that Taeyoung had passed the statutory age limit when the decree was entered.  The court concludes that this draconian approach, while simple to enforce, is unsupportable.  Specifically, it is "contrary to clear congressional intent" and "frustrates the policy that Congress sought to implement."  Coyt, 593 F.3d at 905-06.

The first problem with the BIA's policy of universally rejecting I-130 petitions for retroactively adopted children is that it entirely ignores Congress's stated purposes of promulgating an immigration policy that accords liberal treatment to children and strives to keep bona fide families together.

The second problem with its approach--amply demonstrated in this case--is that the BIA ignored the important fact that neither the state court nor the federal government perceived any hint of fraud in the events that occurred here. The court concludes that the BIA's decision must be reversed.

As the BIA recognized in <u>Cariaga</u>, maintenance of family unity and, in particular, the liberal treatment of children represent well-known goals of the INA. <u>See</u> H.R. Rep. No. 1365, 82d Cong., 2d Sess., 29 (1952), <u>reprinted in</u> 1952 U.S.C.C.A.N. 1653, 1680 (statute implements "the underlying intention of our immigration laws regarding the preservation of the family unit"); H.R. Rep. No. 1199, 85th Cong., 1st Sess., 7 (1957), <u>reprinted in</u> 1957 U.S.C.C.A.N. 2016, 2020 ("The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united."); <u>Fiallo v. Bell</u>, 430 U.S. 787, 795 n.6 (explaining that the INA aims to preserve family units and keep families united); <u>Kaho v. Ilchert</u>, 765 F.2d 877, 885 (9th Cir. 1985) (purpose of INA is to reunite families); <u>cf.</u> <u>Matter of Cariaga</u>, 15 I. & N. Dec. at 717 (recognizing goals of family unity and liberal treatment of children).

As the Government notes, Congress did not intend to allow adults to seek entry as "adopted" persons under the Act. The original version of the Act did not provide for the definition of "child[ren]" eligible for immigration without quota to include adopted children. <u>See</u> INA of 1952, Pub. L. No. 82-414, § 101(a)(27)(A), 66 Stat. 163, 166. When the Act was amended in 1957 to include adopted persons in the definition of

"child[ren]" classified as nonquota immigrants, the Act clarified that a qualifying "child" was one "adopted while under the age of fourteen years." See Pub. L. No. 85-316, § 2, 71 Stat. 639, 639 (1957). In Cariaga, the BIA noted the statement of one of the amending bill's sponsors, Representative Francis Walter, expressing concern about deliberate evasion of quota restrictions that would follow if Congress permitted "the preferential entry of adult aliens adopted long after they reach their majority." See Cariaga, 15 I. & N. Dec. at 717 n.1 (quoting 105 Cong. Rec. 4831, 11578-80 (Mar. 20, 1959)); see also Defs.' Mot. at 19. Nevertheless, it is abundantly clear, and the Government does not seriously dispute, that adult adoptions were not Congress's sole concern in fashioning a definition that gave adopted children immediate relative status.

Despite paying lip service to the multiple goals of family unity, the liberal treatment of children, and fraud, Cariaga evidences the BIA's concern exclusively with the issue of fraud. By the time it decided Drigo, six years later, the BIA did not even mention family unity or the liberal treatment of children. Elevating fraud prevention to the sole cognizable purpose of the INA in each and every I-130 petition presenting retroactive adoption decrees "entirely fail[s] to consider an important aspect of the problem." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

Moreover, the BIA made no attempt to connect relevant facts to the decisions it rendered. See Or. Nat. Res. Council, 476 F.3d at 1036. Despite reasoning that its interpretation was needed to prevent fraud, neither Cariaga nor Drigo contained any hint, much less a finding, of fraud. In Cariaga, the BIA explained that the petitioner had inquired about adopting the beneficiary when the beneficiary was a young child, but had abandoned the effort after an attorney told the petitioner that, because the beneficiary's natural mother could not be located and so her consent could not be secured, any adoption had to wait until the beneficiary turned eighteen and could consent to the adoption himself. 15 I. & N. Dec. at 716. In Drigo, the BIA recognized that the decree had been entered only three months after the beneficiary's fourteenth birthday. 18 I. & N. Dec. at 224. Indeed, in that case the BIA suggested that the petitioner simply file a new petition for immediate relative status, because Congress had subsequently raised the age to sixteen. See id. Thus, in neither of these cases was the BIA actually concerned with the problem of "spurious" adoptions highlighted in Cariaga.

The unpublished decision rendered here demonstrates the same unilateral approach to Taeyoung's adoption. The USCIS did not suggest, and the Government does not now argue, that Taeyoung's adoption was "spurious." The record demonstrates only that Taeyoung immigrated to the United States in 2003 and began

living with Hong's family upon arrival, that Hong sought to adopt
him later that year, and that Hong did successfully adopt
Taeyoung in January 2004.  The only fault the Government
identifies in Hong's actions is the timing of Hong's filing of
her petition just three months before Taeyoung's birthday.
Defs.' Mot. at 25.  But the Government would be making the same
statutory argument even if the adoption petition had been filed
six or nine months before Taeyoung's birthday but not signed by
an overtaxed state court by the time of Taeyoung's sixteenth
birthday.  The Government thus would make the viability of an I-
130 petition depend on a state court's caseload.

        Lacking a factual basis in this case for its concerns,
the Government instead speculates about what "could" occur.  <u>See,
e.g.</u>, Defs.' Reply at 10-11 (stating that petitioners could
convince states to enter any date the petitioner wanted and
thereby circumvent Congress's concern with adult adoptions), 23
(suggesting that the BIA would face increased numbers of adult
adoptions if it were required to honor retroactive adoption
decrees).  There is no evidence that any court would
automatically let a petitioner pick any date he or she wanted as
an adoption's effective date.  In the present case, that clearly
would not happen.  Hawaii Revised Statutes § 578-8 expressly
permits a court to fix an adoption date different from the date
the decree is entered, but specifies that the earliest effective

date of the adoption may be the date the petition was filed, and the latest date may be six months after the decree is entered. Under section 578-8, therefore, Hong could not have sought to adopt an adult. If Taeyoung had been sixteen or older when the petition was filed, Hawaii Revised Statutes would not have permitted the court to issue an adoption decree that would have qualified under the Act.

More fundamentally, the BIA can address any fraud concern by inquiring as to what actually occurred. In Kaho, the BIA raised similar concerns with respect to Tongan "customary" adoptions, a practice by which a child may be adopted by being taken into a family and raised and maintained by the family as its own child, but without ever obtaining a court decree to that effect. 765 F.2d at 879, 883. The BIA argued that the "fluid[]" nature of customary adoptions "would create an unacceptable potential for fraud and manipulation." Id. at 886. On appeal, the Ninth Circuit held that the BIA had erred in unilaterally excluding customary adoptions from consideration under the INA because such adoptions are valid under Tongan law. Id. As to the issue of fraud, the Ninth Circuit noted that "[t]he [USCIS] is quite capable of ferreting out fraudulent claims." Id. The court reasoned that the agency could review evidence submitted in the case to determine whether the adoption was bona fide and had, in fact, occurred under the circumstances presented. Id.

The USCIS can always consider evidence, if it exists, that an adoption decree's effective date does not represent the actual date of the adoption. A state court's determination that a particular date represents the date a child was adopted should be the starting point of the analysis. See Haw. Rev. Stat. § 578-8 (authorizing court to set date of adoption as early as the filing of the petition, and as late as six months after the date of the entry of the decree); CAR at 14 (Taeyoung's adoption order, declaring that, "[a]s of the date of this decree, the child is decreed to be the petitioners' child"); cf. In re Adoption of Sade, 906 N.Y.S. 2d 776, at *2-*3 (N.Y. Fam. Ct. 2009) (denying petitioner's request to issue adoption order "nunc pro tunc," because the facts showed that the petitioner had not adopted the child as of the date requested).

At the hearing on the present motions, the Government additionally argued that considering the adoption date to be the date the decree was entered is reasonable because such a rule is easy to apply in a uniform manner. As the court pointed out at the hearing, Hong's understanding of the statute would be equally easy to apply, as the USCIS would only need to read the effective date off of the adoption decree. But the court is not holding here that the Government must honor each and every decision entered by a state court. This court holds only that, given Congress's stated purposes of liberal treatment of children and

24

of keeping families together, the BIA's failure to effectuate those policies in its reading of the statute, instead imposing an inflexible deadline based solely on the entry date of the adoption decree, is arbitrary and capricious.  This case involves a valid adoption decree setting forth an effective date prior to Taeyoung's sixteenth birthday, a decree the Government does not suggest was fraudulently obtained.  The BIA should have honored the state court's determination of the adoption's effective date.

Finally, although such decisions do not bind this court, the court notes that its conclusion today is consistent with other district courts around the country that have addressed this issue.  Those courts have uniformly held that a BIA failure to honor an adoption decree's effective date is error.  See Velazquez v. Holder, No. C 09-01146 MEJ, 2009 WL 4723597 (N.D. Cal. Dec. 9, 2009) (reversing BIA decision denying adoptive father's I-130 petition and noting that state court's nunc pro tunc order fixed adoption date as day before beneficiary's sixteenth birthday and that adoption was delayed because of the Department of Justice's delay in providing required information to the state); Gonzalez-Martinez v. Dep't of Homeland Security, 677 F. Supp. 2d 1233, 1237 (D. Utah 2009) (holding that each adopted child "should be considered not as subject to a blanket rule, but on an individual basis, with emphasis . . . on the professed policy of Congress of keeping families together when

families actually exist"); <u>Messina v. U.S. Citizenship & Imm.</u>
<u>Servs.</u>, No. Civ.A. 05CV73409DT, 2006 WL 374564 (E.D. Mich. Feb.
16, 2006) (BIA decision refusing to recognize adoption decree's
effective date was arbitrary and capricious); <u>Allen v. Brown</u>, 953
F. Supp. 199 (N.D. Ohio 1997) (same). Joining these courts, this
court concludes that the BIA erred in denying Hong's I-130
petition.

     F.   <u>Legal Custody.</u>

     The Government argues in a single paragraph of its
brief that it should alternatively be granted summary judgment
because Hong failed to accumulate two years of legal custody
before the I-130 petition was submitted, as required for the
granting of the petition. Defs.' Mot. at 30 (citing 8 U.S.C.
§ 1101(b)(1)(E)). In support of this argument, the Government
cites regulations stating that, "if custody was not granted prior
to the adoption, the adoption decree shall be deemed to mark the
commencement of legal custody." 8 C.F.R. § 204.2(d)(vii)(A).
The Government asserts that legal custody was not granted prior
to the adoption and that the adoption decree's date of January
27, 2004, was less than two years before Hong filed her I-130
petition on December 6, 2005. Defs.' Mot. at 30.

     Hong argues that the Government may not rely on this
argument because the BIA did not rely on this ground in denying
Hong's petition. Hong also argues that the court's determination

of the date of adoption is dispositive of the legal custody
issue.  Pl.'s Mot. at 30-31.  That is, Hong says that, if the
court accepts the retroactive adoption date of October 3, 2003,
and if that adoption date marks the start of legal custody, then
Hong had legal custody of Taeyoung for more than the required two
years when the I-130 petition was filed on December 6, 2005.  The
court agrees with both of Hong's arguments.

First, the court concludes that the Government may not
seek summary judgment on this legal custody ground.  The
Government's argument appears to be another post-hoc
rationalization for agency action.  Neither the BIA nor the
District Director relied on a perceived lack of sufficient legal
custody.  See CAR at 17, 22-23.  As discussed above, the court
does not consider post-hoc justifications on which the agency did
not rely.  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 50.

Second, the Government's sparse briefing of this issue
cites nothing suggesting any legitimate challenge to legal
custody.  See Defs.' Mot. at 30.  The Government fails to carry
its burden of showing an entitlement to summary judgment based on
a lack of legal custody.

G.   Scope of Remand.

Hong urges the court to remand this case to the BIA
with instructions to grant Hong's I-130 petition.  Citing INS v.
Ventura, 537 U.S. 12 (2002) (per curiam), the Government argues

27

that such a decree is beyond the scope of this appeal because it would require the court to decide that Hong had two years of legal custody of Taeyoung, a decision that should be vested with the USCIS in the first instance. See id. at 14-18 (holding that the court of appeals erred in granting asylum to the respondent based on a finding that the conditions in the respondent's home country had not changed because such a question should be answered by the BIA, not the court of appeals, in the first instance). Contrary to the Government's assertion, Ventura does not require readjudication of Hong's petition.

In Ventura, the BIA had recognized that changed country conditions constituted an open question, but, because it denied asylum to the respondent based on another ground, the BIA explicitly declined to address the issue. See id. at 15 (explaining that the BIA opinion determined that the respondent failed to show persecution on account of political opinion, and then "added that it 'need not address' the question of 'changed country conditions'") (quoting BIA opinion). In this case, by contrast, the issue of legal custody appears to be a brand new argument raised by the Government for the first time before this court. At the hearing on this matter, the Government acknowledged that the District Director's opinion made no mention of legal custody, that the Government had not raised the issue of legal custody on Hong's appeal to the BIA, and that the BIA made

no mention of the issue during its adjudication of the appeal. Even now, the Government's argument that legal custody is somehow lacking is half-hearted at best, consisting of a mere paragraph at the end of its lengthy brief.

Moreover, in <u>Ventura</u> the Court emphasized that the record contained disputed facts regarding the issue of changed country conditions, and noted that country conditions had likely changed even further in the intervening time of the appeal. <u>Id.</u> at 17-18. The Court explained that the BIA was entitled to evaluate the evidence before it in the first instance, and that such evaluation could provide "informed discussion and analysis" of the issue to assist in later review by a court. <u>Id.</u> at 17. By contrast, in the present case, the Government calls to the court's attention nothing in the factual record of this case suggesting a lack of the required legal custody. This court has determined that the adoption decree's effective date, not its entry date, marked the date of Taeyoung's adoption. As discussed above, Taeyoung's adoption date is October 6, 2003. That date is the latest possible date that legal custody commenced, and the Government does not even hint that there has been an issue with legal custody since that time. Nor has the Government advanced any reason that it could not have raised legal custody issues earlier.

Lacking a basis in the record to suggest that legal

custody remains a valid open question in this case, the court concludes that the burdens attendant on Hong and Taeyoung from relitigating this case weigh strongly in favor of granting Hong's petition. In particular, the court is mindful of the difficulties associated with piecemeal litigation, multiple appeals, and the increased likelihood of lack of continuity if administrative or judicial factfinders change over the years. It is now February 2011, more than seven years since Taeyoung was adopted by Hong, and he is still waiting to be accorded immediate relative status.

V.      <u>CONCLUSION.</u>

Because Taeyoung's adoption date is October 6, 2003, Taeyoung was "adopted while under the age of 16." The Government's motion for summary judgment is DENIED. Hong's motion for summary judgment is GRANTED. The court REMANDS the matter to the BIA for further proceedings consistent with this order. There being no basis for denying the I-130 petition, it should be granted on remand.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 18, 2011



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Hong v. Napolitano</u>; Civil No. 10-00379 SOM/KSC; ORDER GRANTING SUMMARY JUDGMENT IN
FAVOR OF PLAINTIFF.